IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  11-cv-00355-PAB-KLM

DARWYNN L. BARWICK,

      Plaintiff,

v.

JEFFREY BEHNKE, D.P.O. No. 96003, and
MICHEAL MAY, D.P.O. No. 00045,

      Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion for Summary Judgment** [Docket No. 54; Filed May 23, 2012] (the "Motion").  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C.3., the Motion was referred to this Court for recommendation. [#55].  Plaintiff, who proceeds in this matter *pro se*, filed a Response to the Motion on June 21, 2012.  [#57]  Defendants filed a Reply on July 5, 2012.  [#58].  The Court has reviewed the Motion, the Response, the Reply, the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons stated below, the Court respectfully **RECOMMENDS** that the Motion [#54] be **GRANTED**.

### I.  Summary of the Case

Plaintiff initiated this lawsuit on February 10, 2011.  *See Complaint* [#1].  After Magistrate Judge Boland granted Plaintiff opportunities to cure the deficiencies in his complaint, *See* [#3, #8], Plaintiff filed an Amended Complaint [#6] on April 4, 2011 and a

-1-

second Amended Complaint [#13], the operative complaint, on June 24, 2011.  In an Order [#14] issued on July 20, 2011, the District Judge dismissed two of the three claims Plaintiff alleges in the Amended Complaint [#13].  Plaintiff alleges in the remaining claim that on July 27, 2010, Defendant Behnke violated the Fourteenth Amendment when he arrested Plaintiff because Plaintiff is black, and that Defendant May failed to obtain a statement from Plaintiff and other witnesses regarding the incident which led to Plaintiff's arrest.  [#13] at 5, 7; [#14] at 2, 6-7.   The District Judge narrowed the remaining claim by finding that it does not include a Fourth Amendment challenge to the arrest based on lack of probable cause or the absence of a warrant.  [#14] at 2.

Plaintiff's allegations arise from an incident on July 27, 2012 in which he and his neighbor, Scott Sickler, were involved in a fight.  *Plaintiff's Deposition* [#54-1] at 36.[1] Plaintiff's Amended Complaint contains few factual allegations, including almost none about the incident that resulted in his arrest.  *See* [#13] at 16-18.  In the Response, however, Plaintiff includes a section describing his version of events.  [#57] at 6-7.  Plaintiff also described the incident in his deposition.  [#54-1] at 82-89.  Plaintiff contends that after hearing a knock on his back door, he opened it and saw Mr. Sickler on his back porch. [#57] at 6-7.  He states that Mr. Sickler, using profanity, told Plaintiff he had to do something about his dog.  *Id.*  After Plaintiff responded with profanity and told Mr. Sickler to get off his property, Plaintiff claims Mr. Sickler chest-bumped him and started reaching for something, after which a fight ensued.  *Id.*  Plaintiff states that he and Mr. Sickler then fell off his back porch onto the neighbor's grill, knocking it over.  *Id.*  Plaintiff states that the

---

[1] The cited deposition page numbers reflect the page numbers in the deposition transcript, not the page numbers generated upon the electronic filing of the Motion and exhibits.

neighbor came out of his house and yelled at them to take it somewhere else.  *Id.*

According to Mr. Sickler, he knocked on Plaintiff's door to talk to Plaintiff about his barking dog.  *Statement of Mr. Sickler* [#54-2].  Mr. Sickler states that when he asked Plaintiff if he would do something about the dog, Plaintiff told him to mind his own business and get off his property.  *Id.*  When Mr. Sickler said he was going to call the police or animal control, Plaintiff became aggressive and punched Mr. Sickler in the mouth several times and pushed Mr. Sickler into a neighbor's grill.  *Id.*  Mr. Sickler states that the neighbor who owned the grill then came out of his home yelling profanities.  *Id.*  According to Mr. Sickler, the neighbor then kicked him in the face while Plaintiff had Mr. Sickler in a choke hold.  *Id.*  Mr. Sickler states that the neighbor then went inside to get a weapon because when he came back outside someone yelled that he had a knife.  *Id.*  A police officer then arrived and stopped the fight.  *Id.*

A different neighbor, Ebony Cunnigham, witnessed some of the incident and provided a statement to police.  *Statement of Mr. Cunningham* [#54-4].  Mr. Cunningham stated that from his kitchen door, he observed Mr. Sickler knock on Plaintiff's door.  *Id.*  He stated that when he came back after walking away from his door, he saw Plaintiff "swing on" Mr. Sickler, knock him to the ground and grab him around his chest with Mr. Sickler's head in Plaintiff's chest.  *Id.*  Mr. Cunningham stated that Plaintiff and Mr. Sickler knocked over the neighbor's grill, causing the neighbor to get angry and come outside yelling about damage to his property.  *Id.*  Mr. Cunningham stated that the neighbor then went back into his house, came out with what appeared to be a small hunting knife, and swung it in Mr. Sickler's direction.  *Id.*  Mr. Cunningham stated that after he stepped in to keep the neighbor from swinging the knife again, the neighbor returned to his house and Mr.

Cunningham walked into the alley as police arrived.  *Id.*

With respect to Defendants' actions, Plaintiff presents very few facts.  Plaintiff does not dispute that Defendants are officers with the Denver Police Department, that they responded to a call of a disturbance at his residence at 1422 Valentia Street on July 27, 2010, and that he was arrested for assault.  *Scheduling Order* [#32] at 9-10.  In the Amended Complaint, he alleges that Defendant Behnke violated his rights under the Fourteenth Amendment by arresting him but failing to also arrest Mr. Sickler.  [#13] at 16, 18.  He presents no other facts about Defendant Behnke in his Amended Complaint to support his allegation that the arrest was racially motivated.  *See* [#13] at 16-18.  Likewise in the Response, Plaintiff presents no additional factual support, beyond the fact that Behnke arrested him, for his claim of racial discrimination.

Regarding Defendant May, the only factual allegation in the Amended Complaint is that May never allowed Plaintiff or any of his witnesses to provide a written statement regarding the incident.  [#13] at 18.  Plaintiff fails to identify who, if anyone, wanted to provide a statement on his behalf but was denied the opportunity to do so.  *See id.*  In the Response, Plaintiff takes issue with Defendant May's written report about the incident, claiming he intentionally fabricated details about what Ebony Cunningham said.  [#57] at 5.  He also claims that May intentionally omitted from his report the amount of time Mr. Cunningham was away from his kitchen door.  *Id.* at 8.  Plaintiff disputes May's assertion in his report that during the investigation Plaintiff became uncooperative and would not give a written statement.  [#57] at 10.  Plaintiff does not appear to dispute that May did question him about the incident as set forth in May's report.  *Id.* at 10-11.  Plaintiff argues, however, that May intentionally left Mr. Sickler's date of birth out of the report to undermine Plaintiff's

lawsuit because a check of Mr. Sickler's date of birth would have revealed a criminal record. *Id.* He claims that May purposely chose to ignore Mr. Sickler's criminal record. *Id.* at 12.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Pursuant to Fed. R. Civ. P. 56(c), summary judgment should enter if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321,

1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).   The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

When considering Plaintiff's Response [#57] and other filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).   In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

**A.     Legal Standard for Fourteenth Amendment Selective Enforcement Claims**

It is well established "that the Constitution prohibits selective enforcement of the law based on considerations such as race."  *Whren v. United States*, 517 U.S. 806, 813 (1996).

"Racially selective law enforcement violates this nation's constitutional values at the most fundamental level; indeed, unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendement." *Marshall v. Columbia Lea Regional Hospital*, 345 F.3d 1157, 1167 (10th Cir. 2003).  Claims alleging selective enforcement of the law on the basis of race are properly brought under the Equal Protection Clause.  *Whren*, 517 U.S. at 813.

To establish a claim of racially selective law enforcement, "[t]he plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose."  *Marshall*, 345 F.3d at 1168.  The discriminatory effect element is established by making "a credible showing that a similarly-situated individual of another race could have been, but was not, arrested ... for the offense for which the [plaintiff] was arrested."  *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001). "[T]he discriminatory purpose element requires a showing that discriminatory intent was a 'motivating factor in the decision' to enforce the criminal law against the [plaintiff]."  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (quoting *Marshall*, 345 F.3d at 1168).

The standard for proving a selective enforcement claim is a demanding one. *Alcatraz-Arellano*, 441 F.3d at 1264.  "Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must dispel the presumption that a law enforcement official has not violated the Equal Protection Clause with 'clear evidence to the contrary.'" *United States v. Hernandez-Chaparro*, 357 Fed.Appx. 165, 166 (10th Cir. 2009) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).  "Police officers and departments should not lightly be put to the expense and risk of trial on

-7-

charges of racial discrimination that may be easy to make and difficult to disprove."
*Marshall*, 345 F.3d at 1167. Police possess broad discretion in determining when to make a traffic stop or arrest. *Alcatraz-Arellano*, 441 F.3d at 1264. "Judicial interference with law-enforcement discretion might 'induce police officers to protect themselves against false accusations in ways that are counterproductive to fair and effective enforcement of the laws,' such as by directing law enforcement resources away from minority neighborhoods." *Id.* (quoting *Marshall*, 345 F.3d at 1167).

## B.   Application

Defendants contend that Plaintiff has no evidence that they were motivated by a discriminatory purpose or that their actions had a discriminatory effect.[2] [#54] at 13. They point out that Plaintiff conceded in his deposition that neither Defendant made racially derogatory remarks to him or physically harmed him. [#54] at 14. Defendants argue that Plaintiff's claim is premised on the notion that his arrest must have been motivated by racial discrimination because Plaintiff, who is black, was arrested and Mr. Sickler, who is white, was not. *Id.* They argue that because Plaintiff has presented no evidence that his arrest was motivated by racial discrimination, they are entitled to summary judgment on his selective enforcement equal protection claim. [#54] at 17.

In the Response [#57], Plaintiff first argues that the Motion should be denied because Defendants identified the date as July 27, 2012 instead of 2010. [#57] at 1-2. He

---

[2] Defendants also discuss Fourth Amendment probable cause standards and argue that probable cause existed to arrest Plaintiff. [#54] at 10-13. As noted above, however, the District Judge found that Plaintiff's remaining claim does not include a Fourth Amendment challenge to the arrest based on lack of probable cause or the absence of a warrant. [#14] at 2. The Court therefore need not address whether Defendants had probable cause to arrest Plaintiff in compliance with the Fourth Amendment.

further contends that Defendants are attempting to commit fraud by submitting incomplete documentation with the Motion and that they are engaged in a cover-up to get this case dismissed. [#57] at 3, 5. He contends that Defendants are trying to mislead the Court but fails to explain how with any specificity. [#57] at 3. Plaintiff also explains how he disagrees with the written statements of Mr. Sickler, Mr. Cunningham and the Defendants, and presents his own version of events. [#57] at 4-11. Plaintiff concludes by asserting that "pure racism is the reason for his arrest and that is a fact...." [#57] at 16.

Defendants present Plaintiff's deposition testimony in support of its position that Plaintiff lacks evidence for his selective enforcement claim. As noted above, Plaintiff did not identify anything Defendant Behnke said that Plaintiff believes was racially motivated. [#54-1] at 147-148. Rather, Plaintiff testified that "his actions said it all." *Id.* at 148. When asked about what actions he was referring to, Plaintiff said that the officer arrested him after he used his freedom of speech to express how he felt about the incident. *Id.* Plaintiff also testified that Behnke did not physically harm him and did nothing other than "glare" at him. *Id.* at 36, 103-105.

Regarding Defendant May, when asked what he did to violate Plaintiff's rights, Plaintiff testified that "[h]e agreed with the arrest." [#54-1] at 151. Plaintiff then admitted that he was unaware of anything else that Defendant May did. *Id.* at 151-152. Plaintiff also acknowledged that May did not physically harm him. *Id.* at 36.

Defendants also attach to the Motion written statements by Mr. Sickler and Mr. Cunningham, and written reports by Defendant Behnke and Defendant May, among others, prepared in conjunction with the incident. [##54-2, 54-3, 54-4, 54-7 and 54-8]. Although Defendants fail to include affidavits establishing the statements' authenticity, Plaintiff, while

disputing their content, does not challenge their authenticity.  Plaintiff can point to nothing in the written report of either Defendant, other than his own unsupported speculation regarding alleged omissions and misleading statements, to support his claim that his arrest was racially motivated.  *See* [##54-7 and 54-8].  The reports make clear that after investigating the incident, Defendants believed Mr. Sickler's version of events, as corroborated by Mr. Cunningham.  *Id.*  They therefore determined that Plaintiff and the neighbor who owned the grill assaulted Mr. Sickler, and placed them both under arrest.  *Id.* Nothing in either report suggests that Plaintiff's race played any role in the investigation or subsequent arrests.  *See id.*  Nor has Plaintiff presented any admissible evidence that shows a racial motivation for the arrest.

Based on the foregoing, the Court finds that Defendants are entitled to summary judgment based on the lack of evidence on the essential elements of Plaintiff's selective enforcement claim.  The Court finds that Defendants have satisfied their burden to make a prima facie showing of a lack of evidence, such that the burden shifts to Plaintiff to put forth sufficient evidence on the essential elements of his claim.  Plaintiff, however, has failed to do so, offering nothing more than conclusions based on speculation and his own subjective belief.  Plaintiff's evidence is insufficient for a jury to reasonably conclude that Defendants' actions had a discriminatory effect or were motivated by a discriminatory purpose.  *See Marshall*, 345 F.3d at 1168.  Even if the mere fact that Mr. Sickler was not arrested were sufficient to raise a genuine issue of material fact as to a discriminatory effect, there is no evidence that Defendants' actions were motivated by a discriminatory purpose.  Combining the lack of evidence presented with the significant burden required to establish an equal protection violation based on selective law enforcement, the Court

finds that summary judgment in favor of Defendants is warranted here.

## IV.  Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that Defendants' Motion for Summary Judgment [#54] be **GRANTED**.

The Court FURTHER **RECOMMENDS** that judgment enter in favor of Defendants on Plaintiff's remaining claim.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  November 13, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge